Our first case this morning is Retractable Technologies v. Becton Dickinson. Mr. Lee. Thank you, Your Honor. May it please the Court, my name is Bill Lee and together with my partner, Bill McElwain, I represent C.G. In my time this morning, I would like to address three issues. First, the District Court's application, legally erroneous application, we believe, of the mandate rule. As the Court knows, we believe that the mandate rule required further proceedings on the issue of damages. Second, the District Court's refusal to apply the Tronzo exception in any event of the mandate rule for a substantial change in circumstances. And third, RTI's argument, principally in response to ours, that the verdict could somehow be sustained on the one ML product alone. So if I could turn to the first issue. Mr. Lee, maybe you could discuss with me the burden of proof. It strikes me that you have a pretty lofty hurdle here to jump over. Your Honor, I don't think this is not a situation where there is a burden in the classic sense. I think in applying the Court's mandate rule, it is a de novo review of a legal issue that's decided by the District Court. There is some dispute between us as to what the proper standard of review is, but this case was decided below, decided by the District Court and the magistrate judge as a mandate issue. That's just a pure legal question. It's a de novo review, and I don't think there's a burden in either direction. If the mandate rule forecloses review by the District Court, and the question then is whether an exception applies, that's an abuse of discretion standard. Your Honor, it might be if you got to the point where the exception was applied, but in this circumstance, the District Court decided they were legally prohibited from applying the exception. In this case, the decision of the District Court was there is an exception, but the exception does not apply to the Court of Appeals decision itself, and therefore, I don't reach it. Your Honor is correct if you ever reach the situation where the Court acknowledged an exception then looked at the facts to see whether there was an exception. In this circumstance, the District Court decided they were legally prohibited because Tronzo did not permit this Court's decision B to be a change in circumstances. As the Court knows, Tronzo actually says the opposite. In Tronzo, while there was ultimately a decision that there was not a change in circumstances, the question was whether this Court's decision on compensatory damages was a change in circumstances. Tronzo at one point talks about substantial change of evidence. And at another point talks about substantial change in the facts. What's the proper way to look at Tronzo? Your Honor, I think actually either of them is the correct articulation of what the standard is, but I would phrase it to you this way. If there's a substantial change in circumstances, evidence, facts, that would justify revisiting whatever the District Court thought was the mandate from this Court, that would be sufficient. But if a substantial change of circumstances or evidence or facts means a substantial change based on the decision of the Court of Appeals on the merits, does that fully undermine the mandate rule? It doesn't, Your Honor, because it's not necessarily true that the decision of the Court of Appeals will be that change in circumstance. But in patent cases, in a lot of cases, it certainly would be. Well, Your Honor, I agree. And I know the Court has seen many more cases that have multi-patents, multi-products, that actually have just this situation. That's why we have suggested, before you get to the exception, if the Court considers the decisions in NTP and Verizon, there is what this Court has characterized as a normal rule in multi-patent, multi-product cases. But in those cases, there were vacatures. Actually, Your Honor, we went back and, as best we could, we went back and looked at the briefing in both NTP and Verizon. And while there were requests to reverse and remand and vacate, there was no request that we could find in either case for a vacation or a vacature of the damage award for a partial liability determination. But we certainly could do that in any case. We could, if we reversed in part an infringement determination, we could vacate damages and remand without even a request. We could do that on our own initiative. And to the extent that there is any kind of normal rule, maybe that's normally what we would do. I'm not sure that means that there is a normal rule that, when the Court of Appeals says nothing about a vacature or remand, that the District Court can, and indeed should, automatically take another look. Your Honor, actually, if we think about the purpose of the mandate rule, both as a matter of legal principle, intellectually, analytically, and also fairness, if you have a judgment that it's based upon two products here, that one of the products is 80 percent of the sales, it was $47 million and $10 million, and the liability judgment is reversed on the lion's share, and, as Your Honor knows, the judgment that was entered had interest running from a date that was completely predicated upon the 3-mil product. It's March 2002. The 1-mil product wasn't even on the market until 2004. No, no, those are all good facts, but we're still faced in examining this mandate with the reality that it wasn't raised to us at any point that we should vacate the damages award. The damages were never in question, and indeed, without an appeal on an issue, how are we expected to reanalyze the mandate? Your Honor, that actually is one of the critical distinctions between the cases that RTO relies upon in this case. We had no appeal on the damages verdict. The damages verdict was a reasonable royalty determination. We had no objection to the jury charge that was given on the reasonable royalty. The amount, there were competing amounts. The amount came in, actually, at our experts, close to his amount. So I know the Court is burdened more than often than not with issues that really are not appellate issues, but in this particular case, there was no appellate issue on the damages. If you had affirmed on both... How do we know that's what the jury said? Actually, Your Honor, we don't, and I think that's critically important. But the jury answered the question, if any, if the devices infringe any of the claims, in other words, whatever they were, the verdict was $5 million. Your Honor, what they were asking is for any infringement, award damages for the infringement. And the reason, there are two objective facts that will help the Court sort through whether the interpretation that's being offered today is correct or not, and here are the two. The first is, the district court itself, in deciding this issue, said, you can't tell, the verdict is for both products, and you can't disassemble it. The second, though, Your Honor, is... It doesn't say all, it says any. It says any infringement, and then, Your Honor, at the end of the verdict form, when it talks about infringement, it doesn't say any infringement, it says infringement. And then, the other fact I would draw the Court's attention to is this. If the Court considers A-532, there was, as you know, a companion antitrust case. The reason this issue has been alive before the Courts and before this Court is, there was an antitrust case and the desire on RTI's part to put the verdict into evidence in the antitrust case, which, in fact, occurred. When the Court considers A-532, this is a filing in the antitrust case seven months after your opinion and mandate issue. And RTI said, in black and white, the judgment covered, quote, both products. So, you have the District Court saying, both products. That's at A-8. You have both parties saying, both products, for seven months after the mandate issue. There was never a question. To go back to the Chief's question, there was no damages verdict for us to appeal. If the verdict had committed $75 million... You were pretty happy with what you got, weren't you? We were happy with that damage amount, but if the verdict committed $75 million, there might have been an appeal to say that that was not supported by the substantial evidence under this Court's damages law. But there was no error that we could allege in the charge itself. The instructions were correct. And, as a consequence, when the amount came in, we had no... You included a paragraph somewhere that said, in the event you sustain our claim construction concerns, we hope you'll vacate the damages. Your Honor, if we knew this, it would avoid this issue for sure. But there are two sort of broader... But that doesn't appear anywhere, does it? Not even a paragraph in the briefs. There's not a paragraph in the original briefs about vacating the damage award. There were a host of liability issues, and we asked for a reversal on both products. If, Your Honor... If you had to write a holding for us in this case as to how you would like us to come out, what would that holding say? The holding would say... What rule of law should we adopt? The rule of law would be what is articulated in Verizon and NQP, and that the mandate is both the judgment and the decision and the reasoning of this court. The mandate's not just a final line added at the end of an opinion. It is the reasoning, the judgment, and the opinion. When it goes back to the district court, when there's been a partial reversal, the obligation of the district court is to act consistently with that mandate. And this district court, Your Honor, did in part and in part not. It modified the injunction. It modified the injunction because of changed circumstances, which goes to your question about Troncell, but it refused to modify the judgment on damages. And then the last part of my articulation would be, and here's the normal rule. The normal rule, I would take the quote right out of Verizon that says, the normal rule is when there's a partial reversal in a multi-product, multi-patent case, the district court should revisit the issue of damages to determine what the appropriate amount of damages are or what the appropriate resolution of that damage is. So if a party gets a jury verdict for a flat amount of money, a lump sum amount of money, and doesn't want that upset, I mean, the party's just concerned about future injunctive relief or something of that sort. Under your rule, they would have to sort of say in their brief, and if you overturn any part of the infringement or validity determination, do not upset the judgment on the damages. Your Honor, actually, this goes back to the end, and if I could answer this question and then save my rebuttal. No, don't worry about time today, Mr. Lee. This actually goes back to the Chief's question. If a court considers the number of multi-product, multi-patent cases you see, or even multi-patent, multi-claim cases like the NTP case, if you thought about using your 14,000 words to say, if this, then that, if this, then that, if this, then that, it would put a greater squeeze on us than there is already. But, Mr. Lee, if you'd included that paragraph, if this, then, at least we would have had an opportunity for RTI to object and to give us arguments on the other side. When you don't give us anything, we don't have any way of knowing whether they object and what the arguments are. Your Honor, I would say these things. If the court considers your decisions in Exxon v. Uberzoll, in Verizon v. NTP, these issues, the normal rule is not briefed in NTP or Verizon. It is just a common sensical thing that follows on what the court says. I mean, if there was, in this case, the injunction was on the 3-mil and the 1-mil, but the 1-mil was off the market, so the 3-mil was the only product on the market any longer, to allow that injunction to stand would not make common sense or analytical sense. The final point is that Rule 60B is permissive, right? On motion, the court may relieve a party. And, Your Honor, I would say two things in answer to that question. And that's the abuse of discretion, too, coming here, right? The issue is properly, we think, viewed as just an application of your mandate. We raised the issue twice with the district court. There was a need to get a determination because of the antitrust case. We were looking for a mechanism to press the issue and used the Rule 60B motion to press the issue. And while that is abuse of discretion, if there is legal error, it is, by definition, an abuse of discretion. And so if you get to Judge Lynn's question on the exception, if it was legally incorrect to say, I'm precluded from considering the effect of the court of appeals decision, then that would be an abuse of discretion. But, Your Honor, this is a little bit of a different situation because we basically pursued the Rule 60 motion because the first couple passes wasn't moving things along quickly enough. Both parties wanted resolution of this issue before the antitrust case. And that's the reason the mechanism was used. But in any event, since we're claiming legal error, illegal error is an abuse of discretion. Thank you, Your Honor. Thank you, Mr. Lee. We're going to restore your rebuttal time. And would you give Ms. Timms an extra three minutes if she needs it? Thank you very much. My name is Cynthia Timms, and I'm here on behalf of Retractable Technologies. It seemed to me in reading the briefs that, really, this case focused down on an extremely narrow question. And the narrow question is whether the district court was required to conduct a new trial on damages following this court's partial reversal of liability without remanding the case for that purpose. When you look, though, at the facts here, the biggest amount of liability is really in the product that we reversed and rendered outside the patent. Yes. Let me talk about that for a minute. But first let me say that the entire talk that I'm about to have should have occurred in the first appeal. There is no reason that it needed to wait until today. But I will answer your question about the damages. The damages were RTI's version of the damages was a reasonable royalty based on a hypothetical negotiation. So the hypothetical negotiation would have occurred, according to us, in the year 2000. And then they would have paid a lump sum royalty, which we claimed at that time would have been something like $72 million. But the infringement of the one milliliter product, which was the only product ultimately found to be infringing, that didn't occur until, what, 2002 or 2003, correct? Yes. So the hypothetical negotiation should have been based upon discussions that took place then and not 2000. This is the problem with revisiting this now. But what the evidence was at the time. Can you pick up where you were? I wanted to hear where you were going before. Okay. You had your 2000 date, and you were going to calculate it from there. And I agree that that has a little bit of – there are some concerns about that in the record. But I'm interested where you go with that. Well, the hypothetical negotiation in 2000, we claimed would have given rise to a lump sum royalty of $72 million. After that, for 10 years, they would have owned those rights. They could have done anything with them they wanted. They could have made products, not made products, made 10 infringing products, or won. It did not matter. But the hypothetical negotiation in the year 2000 was based on a marketing study that had been done where they had made products that they were using for what they called a conjoint study, which was a marketing study back in the late 1990s. And they have said, I think they tried to make the point here on an incomplete record, that what we were talking about at the time supposedly was the 3ML. It was a mock-up of the 3ML or an early version of that. There's no evidence to support that. They tried to get that evidence out of our experts. What did the jury award the 5ML for? The 5ML was awarded for any infringement of any product, according to the question that was put before them. They had two theories before them. A lump sum theory, which would have allowed – They seemed to have rejected, right? I don't know. Because you didn't get the 73ML. We did not get 73ML. We don't know if they would have just gone back there and said they wouldn't have paid that much for that product at that time but operated from the theory of a hypothetical negotiation. The fact of the matter is 5 million does not match their theory of running royalties, and it did not match our theory of a lump sum. It was a number in between. So we don't know what their thought process was, and typically it is very improper for people to sit around and speculate as to what their thought process was. The question that was posed to the jury was our question, and it perfectly matched – if you look at it, it perfectly matches a lump sum royalty presentation. And what they ended up doing sort of at the last minute was putting on some reasonable royalty damages model. They put it on through their lost profits expert. But they didn't – I'm sorry. No, no. The district court found that both products infringed, and I thought Mr. Lee made pretty compelling points that both parties seemed to have maintained that both infringed throughout this process. How did we deal with that? Yes. The district court – the question before the district court was interest, and he had to figure out how to do his prejudgment interest calculations, and he had to choose one theory or the other in order to figure out how to run interest, because they dictated different manners of calculating that. But I think the chief's question was the damaged theories on both sides were predicated on the assumption, the hypothetical assumption, that both products infringed. Not ours. When you get right down to it, not ours. Ours was predicated on there being an infringing product. It's reflected in the question we posed to the jury. If there was an infringing product that was used in that conjoint study that was used as the timing for the hypothetical negotiation, there only needed to be one infringing product at the end of the day. But the theory would have encompassed both as well, any number of products. The theory encompassed there being an infringing product at the end of the day. In other words, the theory wasn't dependent upon there being one product or two products. It didn't matter. Any product would be covered. That is absolutely correct. So there was no theory presented as to what the damages might be if only one product infringed. No. No one presented that. We presented a theory that just assumed any infringing product. And it could have been 1 ml, 3 ml, 5 ml, 10 ml. They put Mr. Braddock's demonstrative before the court in their exhibit. It's in the record. It's the last page of the record. And what you'll see is that he based his study in part on a BD analysis in which they were analyzing potential profits, and they had listed a string of potential products. And it was 1 ml, 3 ml, 5 ml, 10 ml. And so our model looked at that they wanted to make a product that used our technology, and if we had a hypothetical negotiation, what would they have paid? And they could have made as many products or as few after that as they wanted. As I understand it, your position is that the district court was correct in saying that the mandate rule foreclosed revisiting damages in this case because the damages were that issue was not appealed and there was no request for a vacatur, and the last time around we did not vacate or remand, correct? That's part of our argument, yes, sir. What if the facts were slightly different in that the jury had rendered a verdict where they explicitly found 4 million damages for the 3 ml product, 1 million for the 1 ml product, and that was not appealed, same as what happened here, and there was no vacatur or remand. What would happen in that case where we basically said last time around the 3 ml product does not infringe? I believe what the district court would have done, and I don't believe we would have opposed it in any way. It's the same thing that the court did with the injunction. The injunction was split out. It was injunction as to 3 ml, injunction as to 1 ml, and you can't enforce the 3 ml portion of that. Why would the district judge have the option to revisit the damages judgment in that hypothetical and not in this case? What's the difference? The fact that in my hypothetical there was an explicit determination by the jury, and in this case there was just a lump sum and we don't know what the jury determination was based on, but does the mandate foreclose the district court or does it not foreclose the district court? The situation in that case would be, I believe, that it would be just the same way as if a case came up and there's one liability and one damages question. When liability goes, the damages are gone. So what you have there is sort of the same thing, really, where it's split out and once the liability is gone, if the damages are tied only to that one liability question, then they would be gone. If you come up on a fraud in a contract case, the fraud gets reversed, the fraud damages are gone, the contract damages can still stand. Let me make some... That's not our case. That is not your case. That is absolutely true. And let me... I'm sorry. I was talking with Mr. Lee a lot about, well, if you just put in a little paragraph saying, if you reverse vacate, but didn't he have a pretty good response to that, that if you start writing in every alternative possibility that may come out of a claim construction or a limiting instruction or that it can be so cumbersome and distracting that it undermines clear advocacy. Two responses. One is, you are absolutely right. It's not even a paragraph. It's a one-liner. And if you reverse any portion of the liability, you should remand for a recalculation of damages. And then you were also absolutely right in that that would have triggered a response from retractable to say, no, not in this case. And then we would be making the same arguments on a more complete record about how the damages were presented. And then the second point is, on the portions of the magistrate's opinion in which he did get into a weighing and balancing, and that part of the opinion is there and should not be ignored, he observed that the presentation to this court in the previous appeal appeared to be strategic. And if you think through it, it was a very good strategy because we were after them for $72 million and the jury came back at $5 million. They wanted to get rid of all the liability, but they certainly did not want to face a greater amount of damages if there was a remand of some sort. So they carefully cabined that. And what they said was remand for a retrial of infringement or validity, but they never mentioned damages. And what would have happened? They were happy with the damages. They were very happy with the damages. If they could zero them out, great. But what would have happened if we had gone back? What about the detail, though, that the district court doesn't adjust the interest starting point? The interest starting point for the 1 ML can't be until 2004, and the district court leaves it starting in 2002. Does that seemingly consistent amendment not make some sense? Where he has not adjusted the interest point? Yeah, he's not adjusted. The district court doesn't amend the date for the starting of the interest. It would seem that to me that, I mean, I don't think anybody really argued that he should, frankly, to him at the time. I mean, everybody was arguing about a retrial of damages, and then I think they made the point in the district court that if we're going to, you shouldn't be adjusting the injunction if, you know, it's all, but nobody argued interest to him. I suppose that what they should have argued was that the interest should move to 2004. We could have argued that the interest should move back to 2000, but nobody bothered, and so. Mr. Lee mentioned Tronzo as being helpful to him. Does Tronzo do much for you? Tronzo, the portion of Tronzo I think that they are talking about. Of course, Tronzo is very helpful to us on the fact that you don't get to revisit damages after you've waived your appeal on them. Punitive damages, a big amount. Yes. But let me talk about that part of Tronzo for just a second. First of all, they are complaining about the court's decision on Tronzo under the same de novo standard of review, and they say that the court misinterpreted Tronzo. It did not. Tronzo is simply applying to the mandate the same rule that applies in law of the case, where there are three known exceptions to law of the case, one of them being a very dramatic change in the evidence. In Tronzo, it wasn't the court of appeals decision that was the quote-unquote change in the evidence. The court of appeals has sent it back down to the trial court with the instructions to reconsider the actual damages. The court then had a proceeding where it retried or reconsidered actual damages and concluded that the actual damages were only 520. Then that was the change in the evidence. What Judge Davis said was absolutely correct. He said that this court in Tronzo did not indicate that its own decision could ever be considered to be a change in the evidence, and that's not what happened in Tronzo. It was the district court's re-decision on the actual damages that was the quote-unquote change in the evidence. Well, under Tronzo, doesn't a change in liability for infringement constitute a substantial change? Where did that change occur? It changed in this court, so it should have been a part of their original appeal to this court. And so there was no reason that they could not, in that appeal, have told this court what it should do in case they were successful, which brings up another point I would like to make, which is this court and all of the courts of appeals have been very adamant in cross-appeal situations that a victorious affilee must anticipate what an appellant might argue on appeal and decide within 14 days of when that notice of appeal is filed whether it might need to file a cross-appeal in order to challenge the portions of the judgment that it may not like after the appellant is successful or partially successful on appeal. If we require that across affilies, isn't it even more important that we require of appellants that they merely anticipate that they might win a portion of their appeal and tell this court what this court should do in light of that rather than simply not mentioning things until they get back down to the trial court? I see my time is up. Do you have any other thoughts for us that you need to convey? The one thing is, and it gets back to the strategy that BD was using in its previous appeal, the irony of them trying to cabin the damages so that they would be facing a maximum of $5 million is that if this court had remanded infringement or validity for a new trial and had retractable said, well, fine, let's retry damages, they would be making the exact same arguments that I'm making today. And that was because that was their strategy. At that time, it was a good strategy, but it does have consequential effects. And the consequential effect is it couldn't go above $5 million, but it can't go below it either. Thank you very much. And we would ask that the court affirm the decision votes. Thank you, Ms. Timms. Mr. Lee? Let me start where Ms. Timms ended. If I could read the quote from A532, because I think it's important what counsel represents on behalf of parties to courts. And here is the quote. Seven months after this court's mandate, quote, the jury's award of $5 million for a reasonable royalty was based on its finding that both products infringed. That's until it became an issue in a trust case. We all agreed upon that. There is a suggestion now that the Chief asked whether if we could go back in time, we'd add a portion of a sentence that asks to vacate the damage award. Or could we wish that remand was a word that was at the end of the court's opinion? The answer is obviously for sure. But if you have to take Ms. Timms' argument, I think you will see the issue. The reason that neither this court nor the Fifth Circuit has condoned protective appeals is if we had done a protective appeal on damages, what would the arguments have been? It would have been a completely hypothetical argument about a hypothetical situation that really wouldn't be properly before this court, or an oral argument. We had nothing to appeal. The amount of sales, to answer the Chief's question, is at A478, and the amount of sales is there explicitly. And at A344-48, you will see the testimony of their expert, which basically demonstrates that the 2000 date is anchored to the 3 mil and projections on the 3 mil. I think if we step back from all of this, the mandate rule is just not a formalistic rule. In fact, Tronso describes it as a prudential doctrine. Once this court has entered a decision and a judgment, but has its reasoning, the obligation of the district court, but in order for the system to work, the obligation of all the courts, is to implement the reasoning and rationale and judgment of that decision. And in this case, what happened is this. Part of the reasoning was implemented. The injunction was modified to remove the 3 mil for changed circumstances. I think it's difficult to match that with the unwillingness to apply the Tronso exception. The judgment itself refers to an interest date of March 2002. The 1 mil product wasn't manufactured until a year later. It wasn't on the market until two years later. That demonstrates that it doesn't make sense. So if we step back from some of the details we put before you, we have a case in which both parties agree that the judgment below was for both products. I don't think there's any disagreement that we couldn't have appealed that. There was no legal error for us to pursue at the time. This court confirmed in part and validated in part. And if we just take RTI as a word, what is the fair and commonsensical thing to do? It's to have a damages award that is based upon the product found in the French. Thank you. Thank you, Mr. Lee.